# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONIQUE N. WEATHERSPOON**, <br><br> Plaintiff, <br><br> v. <br><br> **ALEX M. AZAR, II**, Secretary, Department of Health and Human Services <br><br> Defendant, | Case No. 1:17-cv-00871 (TNM) |

## MEMORANDUM OPINION

This is a case about a civil servant's dissatisfaction with the government's sluggishness in accommodating her disability. While delay is no doubt frustrating, it is not, in this case, unlawful.

Monique Weatherspoon suffers from a sensitivity to light that can make it difficult for her to travel to her office and to read her computer screen. She works for the U.S. Department of Health and Human Services. The Department tried to address these problems by devising telework arrangements, providing her with a docking station and large monitor so that she could work from home, and providing her with software specifically designed for visually impaired people so that she could read her screen better. Nonetheless, Ms. Weatherspoon sued Secretary Alex Azar on behalf of the Department,[1] alleging that the Department failed to accommodate her condition and retaliated against her based on her disability discrimination claim. The

---

[1] Alex M. Azar, the current Secretary of Health and Human Services, is automatically substituted for former Secretary Thomas E. Price under Fed. R. Civ. P. 25(d).

Department has moved for summary judgment. For the following reasons, the Court will grant the motion.

## I.

Ms. Weatherspoon works as a Grants Management Specialist in the Division of Discretionary Grants within the Department's Administration for Children and Families ("ACF"). Compl. ¶ 7, ECF No. 1. She also suffers from severe uveitis. Weatherspoon Dep., ECF No. 19-1 at 6. [2] Because of her uveitis, she is sensitive to light and has trouble seeing. *Id.* Her uveitis causes "floaters," shapes or dots moving across her vision. *Id.*

Based on her condition, the Department granted her a series of accommodations and various telework arrangements. In April 2011, the Department allowed her to work from home two days a week for part of the year and one day a week for the other part of the year. April 13, 2011 Mem., ECF No. 19-1 at 241. In September 2012, the Department went further, allowing her to work from home when her condition made it "difficult or impossible" for her to commute to the office. Jan. 14, 2014 Mem., ECF No. 19-1 at 245.

Her vision continued to deteriorate. In July 2015, Ms. Weatherspoon emailed the Reasonable Accommodation Coordinator to tell her that she needed a laptop with a screen larger than 17 inches because of her vision condition. Pl.'s Ex., ECF No. 20-1 at 1. She copied her supervisor, Bridget Shea Westfall, on that email. *Id.* Ms. Shea Westfall approved her request the next month. Aug. 20, 2015 Mem., ECF No. 19-1 at 247.

But the Reasonable Accommodation Coordinator later explained to Ms. Weatherspoon that the Department could not actually provide her a larger laptop because of the Department's Information Technology Infrastructure and Operations' rules and guidelines. Sept. 24, 2015

---

[2] All citations are to the page numbers generated by ECF.

Email, ECF No. 19-1 at 267. Instead, the Department offered her a docking station and a large monitor for her to set up at home. *Id.* at 268.

Ms. Weatherspoon took medical leave throughout November and December of 2015. Weatherspoon Rebuttal Affidavit, ECF No. 19-1 at 69. In early February, the IT Department told Ms. Weatherspoon that her docking station and large monitor were ready for her to pick up. Feb. 4, 2016 Email, ECF No. 19-1 at 270. The IT Department asked her to come into the office, so technicians could test the equipment with her. *Id.* Ms. Weatherspoon cancelled several appointments with the IT Department to pick up the new equipment. Feb. 11, 2016 Email, ECF No. 19-1 at 274. It is unclear when Ms. Weatherspoon eventually picked up the equipment.

Even with this accommodation, Ms. Weatherspoon had trouble using her computer. The Department of Defense Computer/Electronic Accommodations Program ("CAP") suggested to Ms. Weatherspoon that a software called ZoomText could help and sent her a link to a trial version. Pl.'s Ex. 2, ECF No. 20-2 at 1. Copying Ms. Shea Westfall on her email, Ms. Weatherspoon told CAP that ZoomText was not helping. *Id.* Ms. Weatherspoon eventually visited CAP for an in-person needs assessment. Pl.'s Ex. 3, ECF No. 20-3 at 2. After that meeting, CAP recommended a ZoomText Magnifier/Reader 10.1 along with a larger laptop. *Id.* In April, Ms. Shea Westfall learned that CAP would purchase the ZoomText software for Ms. Weatherspoon. *Id.* at 1–2. According to Ms. Weatherspoon, she picked up the ZoomText software when she came into the office for the annual holiday party in December. Pl.'s Ex. 6, ECF No. 20-6 at 17.

During this time, Ms. Shea Westfall found Ms. Weatherspoon's job performance deficient. Report to Duty Mem., ECF No. 19-1 at 252. On March 26, 2016, Ms. Shea Westfall

3

issued Ms. Weatherspoon a formal Report to Duty Memorandum.[3]  *Id.*  In this memorandum, Ms. Shea Westfall explained that Ms. Weatherspoon had not performed key functions of her grant management specialist duties.  *Id.*  She also summarized how Ms. Weatherspoon was not in compliance with her current telework agreement.  *Id.* at 252–53.  Last, she instructed her to report to work the next week.  *Id.* at 253.  She advised Ms. Weatherspoon that if she failed to do so, her absences would be recorded as "absence without leave" unless she provided adequate documentation justifying them.  *Id.*  She also warned her that prolonged "absence without leave" status "could result in discipline, up to and including removal from the Federal service."  *Id.*  Ms. Weatherspoon was not in fact disciplined, however.  Pl.'s Mem. in Opp. ("Pl.'s Mem."), ECF No. 20 at 17.

According to Ms. Weatherspoon, Ms. Shea Westfall issued this Memorandum to retaliate against her for claiming discrimination earlier that month.  *Id.*  She cites a March 2, 2016 email in which Ms. Weatherspoon complained that Ms. Shea Westfall had used her disability against her in a performance review.  *See* Pl.'s Ex. 25, ECF No. 20-25 at 1.

In May, Ms. Weatherspoon asked for 100% telework as an accommodation.  June 8, 2016 Mem., ECF No. 19-1 at 257.  Ms. Shea Westfall denied that specific request and instead granted a different accommodation: Ms. Weatherspoon could telework two days a week and then request "episodic" telework when her medical condition kept her from commuting.  June 14, 2016

---

[3]  On the same day, Ms. Weatherspoon filed a step one grievance against Ms. Shea Westfall based on a rating that she received during a performance review.  *See* March 21, 2016 Grievance, ECF No. 19-1 at 280.  The grievance was denied as untimely, *see* April 14, 2016 Step 1 Grievance Decision, ECF No. 19-1 at 287, and it is not the subject of this lawsuit.  Pl.'s Mem. in Opp. ("Pl.'s Mem."), ECF No. 20 at 18.

4

Mem., ECF No. 19-1 at 262–63.[4]  The Department has never denied a request by Ms. Weatherspoon for an "episodic" telework day.  Weatherspoon Dep. at 41.

Ms. Weatherspoon has sued, alleging both employment discrimination and retaliation. Compl. ¶ 1.  Specifically, she first asserts that the Department "violated the Rehabilitation Act by failing to reasonably and effectively accommodate" her disability.  *Id.* ¶ 19.  She also asserts that the Department violated the Rehabilitation Act by denying her "the right to telework based on her complaint of disability discrimination and her request for a larger-screened laptop computer." *Id.* ¶ 20.

## II.

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law.  *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant makes this showing, the non-moving party bears the

---

[4] A former supervisor had allowed Ms. Weatherspoon to work from home without individual requests.  *See* Pl.'s Ex. 26, ECF No. 20-26 at 2.

5

burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

When ruling on a motion for summary judgment, a court must consider all facts and inferences in the light most favorable to the non-moving party. *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

### III.

Ms. Weatherspoon brings her claims under the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.,* which "governs employee claims of handicap discrimination against the Federal Government." *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (cleaned up). The Rehabilitation Act provides generally that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal employer "solely by reason of her or his disability." 29 U.S.C. § 794(a). "The standards used to determine whether [the Rehabilitation Act's nondiscrimination provision] has been violated shall be the standards applied under . . . the Americans with Disabilities Act." *Id.* § 794(d). And, unsurprisingly, "[b]ecause of the similarities between the Rehabilitation Act and the ADA, cases interpreting either are applicable or interchangeable." *Alston v. Wash. Metro. Area Transit Auth.*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008) (cleaned up).

### A.

The Rehabilitation Act requires federal employers to "take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993). To prevail on a failure-to-accommodate claim, Ms. Weatherspoon must show that (1) she was a qualified individual with a disability; (2) the Department had notice of her disability; and (3) the Department denied her request for a

reasonable accommodation. *See Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307–08 (D.C. Cir. 2010). Ms. Weatherspoon has not alleged—much less produced evidence to show—that the Department denied her a reasonable accommodation.

There are times "a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA [or Rehabilitation Act].'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007)). In determining whether a delay is reasonable, the inquiry hinges on factors such as "the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262–63 (10th Cir. 2001). Ms. Weatherspoon argues that "[a] reasonable jury could find that Defendant denied Ms. Weatherspoon a reasonable accommodation by failing for more than seventeen months to provide her with resources that would enable her to view her computer screen." Pl.'s Mem. at 13.

Not so. First, the evidence shows that there was no 17-month delay. Ms. Weatherspoon requested a larger laptop on July 24, 2015, *see* Pl.'s Ex. 1, and the Department told her that her computer equipment[5] was available on February 4, 2016, *see* Feb. 4, 2016 Email at 270. So it took the Department about a six months to accommodate that request. And for six weeks of that

---

[5] Ms. Weatherspoon requested a laptop with a larger screen, but the Department eventually gave her a docking station and large monitor. Pl.'s Mem. at 4. In her briefing, she makes clear that she is not objecting to this alternative as a reasonable accommodation. Pl.'s Mem. at 5. ("[S]he has not claimed that the Agency failed to accommodate her because they gave her a larger monitor instead of the larger laptop.").

7

six-month period, Ms. Weatherspoon was out on medical leave. Weatherspoon Rebuttal Affidavit at 70.

As for the ZoomText software, Ms. Weatherspoon offers no evidence that she asked Ms. Shea Westfall for it until April 2016. Ms. Weatherspoon did tell the Department earlier that she needed increased contrast to use her computer. *See, e.g.*, Pl.'s Ex. 20, ECF 20-20; Pl.'s Ex. 24, EF 20-24. But she did not request ZoomText software. It took time and effort for Ms. Weatherspoon and her supervisor to figure out what precisely she would need to read the screen. In fact, Ms. Weatherspoon first told Ms. Shea Westfall that ZoomText was *not* helping. Pl.'s Ex. 2. As Ms. Weatherspoon admits, it was not until April that she forwarded CAP's recommendation that she use the ZoomText software to the Department's management. *See* Pl.'s Mem. at 6; Pl.'s Ex. 3 at 2. And then four months later, the software was available for her. Pl.'s Ex. 4, ECF 20-4 at 1–2.

It is not clear whether a six-month (or four-month) delay of this sort could ever qualify as "unreasonable" under the Rehabilitation Act. Ms. Weatherspoon offers no examples where a court denied the government's motion for summary judgment based on a six-month delay alone.

In any event, the Court finds that the delay here was not unreasonable considering the entirety of the record. First, the accommodation was not actually "long-delayed." *See Mogenhan*, 613 F.3d at 1168 (explaining that "there are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable" (cleaned up)). A four- or six-month wait is not inordinate time for the Department to procure the requested technology. *Cf. Matos v. DeVos*, 317 F. Supp. 3d 489, 490 (D.D.C. 2018) (concluding that a two-year delay period was reasonable).

Consider the six-month delay for the new computer equipment. Ms. Weatherspoon requested a laptop with a larger screen, and less than a month later, her supervisor approved that request. Pl.'s Ex. 1; Aug. 20, 2015 Mem. at 247. But then one month after that, the Reasonable Accommodation Coordinator learned that the Department could not provide her a larger laptop because of the Department's Information Technology Infrastructure and Operations' rules and guidelines. Sept. 24, 2015 Email at 267. Still trying to address Ms. Weatherspoon's concerns, the Department offered her a docking station and a large monitor for her to set up at home. *Id.* at 268. So around September, the Department found equipment that would be acceptable to both her and the Department. It took another few months for the Department to provide her with the agreed-upon accommodation.

Some of the delay was out of the Department's control. Recall that Ms. Weatherspoon was out of the office for six weeks. Weatherspoon Rebuttal Affidavit at 70. And after the Department ordered her new computer equipment, she did not pick it up immediately. Feb. 9, 2016 Email at 274. Throughout the process, the record reflects that Ms. Weatherspoon's supervisor was in regular communication with her. Indeed, Ms. Weatherspoon does not accuse Ms. Shea Westfall of being unresponsive. And this was not a situation where the delay kept Ms. Weatherspoon from performing her job. She could still use her old laptop, but with difficulty. *See* Feb. 4, 2016 Email at 270 ("She called back and she was successfully able to login with her existing laptop.").

As to the ZoomText software, it took months to figure out what software would enable Ms. Weatherspoon to read her computer screen. This collaborative process involved Ms. Weatherspoon, her supervisor, the Department's Information Technology Infrastructure and Operations Office, the ACF Reasonable Accommodations Coordinator, the ACF 508

9

Compliance Coordinator, the Grant Solutions Help Desk, and CAP.  Ms. Weatherspoon and Ms. Shea Westfall were in regular dialogue as they tried to figure out how to solve Ms. Weatherspoon's difficulties reading the screen.  Eventually, CAP was able to provide her with ZoomText software and teach her how to use it on her computer.  While Ms. Weatherspoon wanted the software sooner, it was not unreasonable, on these facts, that she did not receive it until December.  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) ("An employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." (cleaned up)).

According to Ms. Weatherspoon, Ms. Shea Westfall delayed the process by telling her that she had mailed the ZoomText software to her without doing so.  Indeed, the Department does not dispute that Ms. Shea Westfall told Ms. Weatherspoon in an email that she dropped the software off "with the mail room guy" on July 26, 2016.  Pl.'s Ex. 4 at 2.  And the Department concedes that Ms. Weatherspoon eventually had to pick up her software from the office.

But Ms. Weatherspoon does not explain why the Department had to mail her the software.  Ms. Weatherspoon could pick up her new computer equipment from her office, and she attended the Department's annual holiday party.  In any event, the record demonstrates that Ms. Shea Westfall worked to address Ms. Weatherspoon's vision problems, for example, by emailing her own supervisors for assistance, providing Ms. Weatherspoon with paper so that she could print documents at home, and promptly providing information to the Reasonable Accommodation Coordinator.

Given the short length of the delay, the Department's repeated efforts to accommodate her needs, and the reasons for the delay, the Court finds that the delay was reasonable as a matter of law.  No one familiar with the operation of our government would be surprised that its

movements were more tortoise-like than hare-like, especially where an individualized accommodation was requested. But that's just business as usual, not evidence of discrimination.

In any event, Ms. Weatherspoon's accommodation claim fails for another reason. An employer is not liable for denying an accommodation request if it participated "in good faith" in an "interactive process" aimed to satisfy the request. *Ward*, 762 F.3d at 32. An employee's notification that she has a disability and request for an accommodation trigger an "interactive process"—a "flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working." *Id.* (cleaned up). Both parties must engage in this interactive process in good faith, and neither "should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Id.* To determine whether the employer held up its end of the bargain, courts look to factors such as whether the employer "obstructs or delays the interactive process" or "fails to communicate, by way of initiation or response." *Id.*

The back-and-forth process detailed here would not allow a reasonable jury to conclude that the Department participated in bad faith. As discussed above, throughout the process, the Department proposed alternative accommodations, kept Ms. Weatherspoon informed, and responded promptly to her questions and requests for information. There is no evidence that the Department obstructed the process or failed to communicate with her. And, of course, the Department did provide her with reasonable accommodations. Perhaps the Department could have provided her with the equipment quicker, but there is no evidence of bad faith. So, to the

extent that the delayed accommodations qualify as denials, the Court concludes that the Department is not liable because it participated in the interactive process in good faith.[6]

**B.**

The Rehabilitation Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [provisions of] the Americans with Disabilities Act." 29 U.S.C. § 794(d). The ADA, in turn, has both an anti-discrimination and an anti-retaliation provision. The anti-discrimination provision makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The anti-retaliation provision, which is at issue here, bars "discriminat[ion] against any individual because such individual . . . made a charge . . . under this chapter." *Id.* § 12203(a); *see Smith v. District of Columbia*, 430 F.3d 450, 454–55 (D.C. Cir. 2005).

In March 2016, Ms. Weatherspoon complained to Ms. Shea Westfall that she had used her disability against her in a performance review. *See* Pl.'s Ex. 25, ECF 20-25 at 1. Ms. Weatherspoon claims that—in retaliation—Ms. Shea Westfall: (1) charged her 40 hours of sick

---

[6] At times, it seems like Ms. Weatherspoon may be making a more general claim that the Department failed to engage in the interactive process in good faith. The Court is skeptical that there is an independent cause of action for failure to engage in the interactive process during the accommodation process. *See, e.g.*, *Matos*, 317 F. Supp. 3d at 497; *Doak v. Johnson*, 19 F. Supp. 3d 259, 278 n.20 (D.D.C. 2014). Rather, plaintiffs typically point to accommodations that they failed to receive because of a breakdown in the interactive process. *See, e.g.*, *Ward*, 762 F.3d at 33–35. Ms. Weatherspoon concedes that she ultimately received a reasonable accommodation and thus that the interactive process ended favorably. In any event, the Court finds that, even viewed in the light most favorable to her, the Department engaged in the interactive process in good faith.

12

leave; (2) ordered her to report to the office; and (3) threatened to fire her if she did not report to the office. Pl.'s Mem. at 16.[7]

To state a claim for retaliation, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) that the defendant took an adverse employment action against her; and (3) a causal connection between the two. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005). For retaliation claims, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In making that determination, "[c]ontext matters," and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69.

Ms. Weatherspoon's first theory of retaliation fails because it is not in her Complaint. *See* Compl. at 6. Plaintiffs cannot use summary judgment briefing to press claims not raised in their complaints. *Winder v. District of Columbia*, 555 F. Supp. 2d 103, 108 (D.D.C. 2008). What's more, in her EEO complaint, she also does not claim that Ms. Shea Westfall charged her 40 hours of sick leave in retaliation. *See* EEO Compl., ECF 22-1.

Her other two theories fail, as well, because they do not allege adverse employment actions. Ms. Weatherspoon claims that Ms. Shea Westfall issued the Report to Duty Memorandum as retaliation. That letter, however, "contained no abusive language, but rather job-related constructive criticism, which 'can prompt an employee to improve her

---

[7] In her Complaint, Ms. Weatherspoon appears to claim that the Department violated the Rehabilitation Act by denying her "the *right to telework* based on her complaint of disability discrimination and her request for a larger-screened laptop computer." *Id.* ¶ 20. But the Department has never denied her request to telework. Maybe this is why Ms. Weatherspoon abandoned this theory at the summary judgment stage.

13

performance.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (quoting *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005)). Ms. Weatherspoon has not presented evidence that the Memorandum affected her position, grade level, salary, promotion opportunities, or telework arrangement.

Ms. Weatherspoon argues that the Memorandum's alleged "threats" themselves were materially adverse actions. But "courts have been unwilling to find adverse actions" when threats are not actualized. *See Baloch*, 550 F.3d at 1199. And to the extent the Memorandum contained a "threat," it only threatened Ms. Weatherspoon with termination *if she did not report to work*.[8] Report to Duty Mem. at 252. The Memorandum expressly provided that her absences would be excused if she could provide "adequate documentation justifying" them. *Id.* Even so, Ms. Weatherspoon did not report to work, and she was not fired.

In any event, the Department has asserted legitimate, nondiscriminatory reasons for it, and Ms. Weatherspoon has not produced evidence that would discredit those reasons and show that its action was retaliatory. *See Baloch*, 550 F.3d at 1200 (D.C. Cir. 2008). So her retaliation claim fails for this reason, too.

The Department asserted that Ms. Shea Westfall issued the Memorandum because Ms. Weatherspoon had failed to address the computer issues that allegedly kept her from doing her job. Def.'s Mot., ECF 19 at 16. In response, Ms. Weatherspoon argues that the evidence shows that she "made great efforts to address her computer issues." Pl.'s Mem. at 18. She does not, however, deny that despite such alleged effort, she had not resolved these issues when Ms. Shea

---

[8] The Court also rejects Ms. Weatherspoon's claim that it was prohibitively expensive for her to report to the office after receiving this Memorandum because it would cost her $59 a day to take an Uber. She did not need to choose between termination and "risking her life." Pl.'s Mem. at 17. Ms. Weatherspoon admits that she can use public transportation, so she could have taken an Uber to her closest metro station and then taken the metro into the office.

Westfall issued her Memorandum.  "[G]ood institutional administration" justified Ms. Shea Westfall telling Ms. Weatherspoon to come into the office so that they could work together, in person, to resolve the persistent technology problems.  *See Baloch*, 550 F.3d at 1200.  Similarly, Ms. Weatherspoon does not dispute that she was not complying with her telework agreement—which the Memorandum outlines as another ground for the Department requiring her to report to the office.

In sum, no jury could conclude that the Department's asserted reasons for the Memorandum (even assuming that the act was materially adverse) were so ill-justified that they were not the actual reasons and that she suffered retaliation for her disability complaint.

**IV.**

For all these reasons, the Department's motion will be granted.  A separate order will issue.

Dated: May 8, 2019　　　　　　　　　　　　　　　　　TREVOR N. McFADDEN, U.S.D.J.